UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
*In re:*                                                    Chapter 11
                                                            Case No.: 10-73724-AST
JNL FUNDING CORP.,

                                        Debtor.
----------------------------------------------------------X

## **DECISION AND ORDER DIRECTING THE APPOINTMENT OF AN EXAMINER**

### **Procedural Background**

On May 14, 2010 (the "Petition Date"), Debtor, JNL Funding Corp. ("JNL" or "Debtor") filed a petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code").[1] As set out in an affidavit filed by Joseph Forgione, President and sole voting shareholder of JNL, Debtor is a specialized real estate finance company which originates and invests in a diversified portfolio of first mortgage assets in the residential real estate market. [dkt item 17] Debtor is a "hard money" lender investing primarily in real estate related first mortgages and construction loans, making loans secured by first priority mortgages primarily on single family and multi-family residential real properties. Debtor's loans typically are made to real estate investors seeking to purchase and renovate properties for investment purposes. Most of Debtor's loans are made to repeat customers who have multiple loans from Debtor at any given time. Debtor's recent loans typically bear interest at the rate of 14% per annum, and Debtor typically receives four (4.0) percentage points for originating the loan. Debtor was incorporated in 2002, prior to which time Mr. Forgione operated a similar business through a d/b/a he called JNL Funding.

---

[1] Also on the Petition Date, Debtor's principal, Joseph Forgione, filed his own voluntary petition, which has been assigned case no. 8-10-73726 (AST)(the "Individual Case").

Prior to the Petition Date, Textron Financial Corporation ("TFC") as lender, and Debtor, as borrower, had entered into a Loan and Security Loan Agreement dated as of August 18, 2006, under which TFC agreed to and did make certain prepetition revolving loans and other financial accommodations available to the Debtor ("Agreement"). The Agreement was subsequently amended to include TD Bank North ("TD") as a participant lender (as amended, the "Loan Agreement" and collectively, the "Lenders").

On May 18, 2010, shortly after the Petition Date, Debtor filed a motion seeking an order authorizing the use of cash collateral pursuant to 11 U.S.C. § 363 (the "Cash Collateral Motion"). [dkt item 7]

On May 20, 2010, TFC filed an objection to the Cash Collateral Motion. [dkt item 11] In TFC's objection, it asserts that, as of the Petition Date, Debtor was liable to the Lenders in the approximate aggregate principal amount of $31,168,105.72, plus any then outstanding interest, fees, and expenses (collectively, the "Pre-Petition Obligations"). On May 20, 2010, an emergency hearing was held, at which time Debtor was authorized to use cash collateral on an interim basis until May 28, 2010.

Prior to the May 28 hearing, Debtor and TFC entered into an agreement extending Debtor's use of cash collateral until July 2, 2010, on certain terms and conditions, and providing adequate protection for such use.[2]

On June 8, 2010, the United States Trustee ("UST") appointed an Official Committee of Unsecured Creditors ("Committee") pursuant to 11 U.S.C. § 1102(a)(1). [dkt item 30]

On June 21, 2010, TFC filed an "Emergency Motion" seeking the appointment of a Chapter 11 trustee, pursuant to 11 U.S.C. § 1104(a) (the "Trustee Motion"). [dkt item 38]  On

---

[2] The Court has scheduled various adjourned hearings on the Cash Collateral Motion, and on the eve of each hearing Debtor and TFC have entered into various agreements extending the Debtor's use of cash collateral. These agreements, generally not exceeding 60 days, have been memorialized by stipulated orders. [dkt items 33, 84, 90]

July 1, 2010, this Court held a status conference on the Trustee Motion. As the result thereof, this Court entered a scheduling order on the Trustee Motion, setting a trial on the Trustee Motion for July 23, 2010, along with a trial on the Cash Collateral Motion, and setting various discovery deadlines incident thereto. [dkt item 60][3]

On July 1, 2010, TFC filed a motion to disband the Committee (the "Committee Motion"). [dkt item 57]

On July 30, 2010, the Court entered an Amended Scheduling Order setting various deadlines for discovery, and scheduling a trial on the Trustee Motion and the Cash Collateral Motion to begin on August 25, 2010 (the "Amended Scheduling Order"). [dkt item 96] A trial on the Committee Motion was also set for August 25.

On August 9, 2010, the Debtor filed an emergency motion seeking to adjourn the trial date of the Trustee Motion and setting new discovery deadlines (the "Adjournment Motion") . [dkt item 103]

On August 10, 2010, this Court entered an Order scheduling certain deadlines with respect to the Debtor's Adjournment Motion. [dkt item 107] Debtor, TFC, and the Committee all filed papers concerning the Adjournment Motion.

On August 11, 2010, this Court entered an Order granting the Adjournment Motion in part, and vacated the Amended Scheduling Order as same related to the Trustee Motion (the "August 11 Order"). [dkt item 109] As part of the August 11 Order, this Court also directed the

---

[3] The parties subsequently agreed to adjourn the July 23 hearing on the Trustee Motion and the Cash Collateral Motion. Prior to the July 23 hearing, the parties did agree to a fourth stipulation extending the use of cash collateral. As a part thereof, Debtor and TFC required each other to agree upon an appraiser to perform appraisals of properties the Debtor wished to fund loans to as part of its normal business operations. By letter dated August 4, 2010, Debtor advised the Court that the parties could not agree on an appraiser. [dkt item 98] As a result, the Court set a protocol for Debtor and TFC to designate potential appraisers. Debtor and TFC provided their proposed appraisers by the Court's deadline. On August 10, 2010, this Court entered an Order regarding the appraisers. [dkt item 106]

Debtor to appear and show cause on August 25, 2010, why an examiner should not be appointed, and set certain deadlines for submission of pleadings related thereto.[4]

On August 20, 2010, Debtor filed a response in support of the appointment of an examiner. [dkt item 134]  On August 23, TFC and the Committee also filed responses in support of appointment of an examiner. [dkt items 137, 138]  The parties, however, expressed disparate views on who should be appointed examiner.

For cause shown, this Court will order the appointment of an examiner.

## **Analysis**

As this Court noted in the August 11 Order, this case has been marked by increasing acrimony, motion practice, letters to the Court, and discovery disputes, all of which appear to be increasing the costs of administration of this estate and the costs to parties-in-interest.  Further, the allegations made by TFC against Debtor and Mr. Forgione in the Trustee Motion appear to substantially or singularly relate to alleged prepetition improprieties.  Debtor denies any impropriety.  TFC, with the protections of Orders of this Court, has numerous safeguards in place regarding the use of its alleged cash collateral, and is receiving adequate protection payments.      In a Chapter 11 reorganization case in which the court does not order the appointment of a trustee, the court may order the appointment of an examiner to conduct an investigation of the debtor and after notice and hearing, if such an appointment is in the interests of creditors, any equity security holders, and other interests of the estate, or if the debtor's fixed,

---

[4] On August 20 and 23, 2010, the Committee and UST respectively filed responses to the Committee Motion. [dkt items 133, 143] A hearing thereon was conducted on August 25, 2010. This Court's ruling on the Committee Motion will be the subject of a separate Order.

- 4 -

liquidated unsecured debts, other than for goods, services, or taxes, exceed $5 million. *See* 11 U.S.C. § 1104(c);.[5] *see also, e.g.*, *In re Fibermark, Inc.*, 339 B.R. 321 (Bankr. D. Vt. 2006).

The appointment of an examiner in this case is appropriate under Section 1104(c)(1) to conduct an investigation of the "allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor," if such appointment is in the interests of creditors and the estate. 11 U.S.C. § 1104(c). In addition to having consent of the parties, this Court does find such appointment to be in the interests of creditors and the estate.[6]

This Court possesses the power and ability to enter such orders as are appropriate to control the cases before it, to discourage wasteful pretrial activities, to improve the quality of the trials through more thorough preparation, and to hold such conferences with the parties and enter such Orders as are appropriate for, *inter alia*, facilitation of the just, speedy and inexpensive disposition of pending matters. *See* FED. R. CIV. P. 16(a), (c)(2)(P); FED. R. BANK. P. 7016, 9014. As a part of the August 11 Order, this Court stayed discovery related to the Trustee Motion, with certain exceptions so as not to inconvenience subpoenaed witnesses, and Ordered

---

[5] Section 1104(c) provides:
 If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if–

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

[6] This Court does not reach the issue under § 1104(c)(2) as to the amount of fixed, liquidated unsecured debts. The Court notes, however, that Debtor's schedules as originally filed listed secured debts in excess of $31 million, and unsecured claims in excess of $23 million. [dkt item 29] The claims register reflects unsecured claims having been filed to date in excess of $21 million, in advance of the bar date of September 21, 2010.

Debtor and TFC to file a joint list of all depositions which have been taken and all depositions which the parties contemplate taking to complete discovery for the Trustee Motion. The joint list of deponents filed on August 23, 2010 [dkt item 141], recites that no depositions had been taken as of August 23, 2010, and annexed a combined list of sixty-nine depositions the Debtor and TFC desired to take of witnesses located in Arizona, California, Florida, New York, New Hampshire, North Carolina, Pennsylvania, Rhode Island, South Carolina, and Vermont.

In addition, in the parties' responses to the August 11 Order, Debtor, TFC, and the Committee referred to investigations being undertaken by financial advisors to TFC and the Committee into, *inter alia*, the alleged prepetition improprieties made the subject of the Trustee Motion. These advisors are RAS Management Advisors LLC, financial advisor to TFC, and Marcum LLP, financial advisor to the Committee.

Thus, Section 1104(c)(1) is satisfied here. Appointment of an examiner is in the interests of creditors and the estate, as such appointment allows for a thorough, independent, and expeditious examination to be made into serious allegations. Such appointment also potentially avoids the excessive expense to the estate and all parties of attempting to schedule and conduct sixty-nine depositions across the continental United States and prepare for a trial on the Trustee Motion. These savings to the estate and all parties will be enhanced by a further stay of discovery related to the Trustee Motion, as well as by harnessing the work product and analysis of RAS and Marcum regarding the allegations underlying the Trustee Motion.[7]

## **Order for the Appointment of an Examiner**

---

[7] In TFC's response regarding appointment of an examiner, it challenged Marcum's investigation into the allegations made in the Trustee Motion as not being neutral and objective. [dkt item 138] In addition, TFC, in the Committee Motion now under submission with this Court, challenges whether any member of the Committee is a creditor of this Debtor, as opposed to being solely creditors of Mr. Forgione in the Individual Case. This decision should not be read to comment upon any of these allegations of TFC.

Based on the foregoing, it is hereby

ORDERED, that the United States Trustee's Office is directed to appoint an independent examiner ("Examiner") to conduct a prompt and cost-effective investigation into the following alleged prepetition financial activities by Debtor:

a) alleged transfers made to Forgione's personal accounts and to accounts of entities owned and/or controlled by Forgione, or parties related to Forgione, using the proceeds of TFC's revolving loan advances to Debtor;

b) alleged diversions by Forgione of millions of dollars of TFC's revolving loan advances to Debtor from Debtor's bank accounts to Forgione's personal accounts, allegedly denominated as "Forgione d/b/a JNL Funding," which funds were then allegedly used by Forgione to make payments to individuals or entities who allegedly made "loans" or "investments" to Forgione personally, as distinguished from loans to or investments in the Debtor;

c) alleged loans made by Debtor to its clients that were supposed to be supported by independent appraisals, but were not supported by legitimate appraisals;

d) alleged loans made by Debtor of millions of dollars to entities allegedly owned and/or controlled by the Debtor and/or Forgione personally; these entities allegedly include, but are not limited to (i) Hampton Square Realty, LLC ("Hampton Square"); (ii) Windsor Development Corp. ("Windsor"); (iii) Quail Run Development Corp.; and (iv) Stoneleigh Woods at Carmel LLC.; and

e) any other matter the Examiner deems necessary and relevant to the complete and full investigation of the four enumerated areas included herein;

and it is further

ORDERED, that in order to meet his or her responsibilities, the Examiner has the authority to issue subpoenas and to require document production and conduct examinations under Rule 2004 of the Federal Rules of Bankruptcy Procedure, provided the Examiner exercises this authority in a manner which is consistent with the Examiner's obligation to complete the investigation in a prompt and cost-effective fashion; and it is further

ORDERED, that Debtor and its employees shall cooperate fully with the Examiner, and shall meet with the Examiner without the need for a subpoena; and it is further

ORDERED, that the Official Committee of Unsecured Creditors and its members shall cooperate fully with the Examiner, and shall meet with the Examiner without the need for a subpoena; and it is further

ORDERED, that TFC and its employees shall cooperate fully with the Examiner, and shall meet with the Examiner without the need for a subpoena; in addition, TFC shall make available to the Examiner the online database previously made available by TFC to Debtor and the Committee to review various documents in connection with the Trustee Motion; and it is further

ORDERED, that RAS Management Advisors LLC, financial advisor to TFC, and its employees, shall cooperate fully with the Examiner, and shall meet with the Examiner without the need for a subpoena; and it is further

ORDERED, that Marcum LLP, financial advisor to the Committee, and its employees shall cooperate fully with the Examiner, and shall meet with the Examiner without the need for a subpoena; and it is further

ORDERED, that "cooperation" in this Order includes but is not limited to the above identified persons providing to the Examiner, upon his / her request, all work papers, reports and findings or preliminary findings prepared in connection with any review, audit, analysis, investigation or examination of Debtor and relevant transactions made from and after January 1,

2006 forward, excluding only attorney work product and attorney-client privileged communications; and it is further

ORDERED, that during the period of time that the Examiner is conducting his or her investigation, no estate professional nor non-estate professional shall conduct any investigation into or analysis of the matters made the subject of the Examiner's responsibilities as set forth herein for which compensation is sought from this estate; any such investigation shall not be compensated by this Court, as such would be duplicative of the Examiner's role and duties under Section 1104 for which the Examiner would seek compensation under Section 330 of the Bankruptcy Code; and it is further

ORDERED, that Debtor and the Committee and their professionals shall not access the online database made available by TFC to review any documents related to the Trustee Motion, but that Debtor may, as necessary, access any online documents related solely to the Cash Collateral Motion; any such prohibited review shall not be compensated by this Court, as such would be duplicative of the Examiner's role and duties under Section 1104 for which the Examiner would seek compensation under Section 330; and it is further

ORDERED, that all discovery related to the Trustee Motion shall remain stayed, pending further Order of this Court; and it is further

ORDERED, that the Examiner shall commence his or her investigation immediately upon the Court's approval of the United States Trustee's appointment of the Examiner; and it is further    ORDERED, that a status conference shall be held with this Court on **September 29, 2010, at 3:00 p.m.** with the Examiner to discuss the progress of the Examiner on this investigation; if the Examiner determines that he/she requires the retention of professionals to complete the task outlined herein, the Examiner may raise such issue at the status conference;

further, the parties shall make themselves available to confer with the Examiner no greater than 48 hours prior to the September 29, 2010, status conference; and it is further

ORDERED, that the Examiner shall prepare a report of his or her investigation, which report shall be filed with the Court on or before **October 25, 2010, at 2:00 p.m.**, and discussed with all parties-in-interest at a status conference to be conducted on **October 27, 2010, at 2:00 p.m.**; provided, however, that the Examiner may seek an extension of the filing deadline for cause.



Dated: August 26, 2010  
       Central Islip, New York

_____  
**Alan S. Trust**  
**United States Bankruptcy Judge**