UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
*In re:*                                                                                  Chapter 11
                                                                                          Case No.: 10-73724-AST
JNL FUNDING CORP.,

                                    Debtor.
----------------------------------------------------------X

## MEMORANDUM OPINION DENYING
## MOTION TO DISBAND CREDITORS COMMITTEE

### Issues Before the Court and Summary of Ruling

Pending before this Court is the request of the purported secured lender to Debtor to disband the Official Committee of Unsecured Creditors. For the reasons herein, this request is denied.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (O), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

### Findings of Fact and Conclusions of Law

This opinion constitutes the Court's findings of fact and conclusions of law.

### Procedural Background

On May 14, 2010 (the "Petition Date"), Debtor, JNL Funding Corp. ("JNL" or "Debtor") filed a petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). Also on the Petition Date, Debtor's President and sole voting shareholder, Joseph Forgione, filed his own voluntary petition, which has been assigned case number 8-10-73726 (AST) (the "Individual Case").

Debtor is a "hard money" lender, primarily making first mortgage loans and construction loans for single family and multi-family residential real properties. [Forgione Affidavit, dkt item[1] 17] Debtor's loans typically are made to real estate investors seeking to purchase and renovate properties for investment purposes. Most of Debtor's loans are made to repeat customers who have multiple loans from Debtor at any given time. Debtor's recent loans typically bear interest at the rate of 14% per annum, and Debtor typically receives four (4.0) percentage points for originating the loan. Debtor was incorporated in 2002, prior to which time Mr. Forgione operated a similar business through a d/b/a he called JNL Funding (the "DBA").[2]

Prior to the Petition Date, Textron Financial Corporation ("TFC") as lender, and Debtor, as borrower, had entered into a Loan and Security Loan Agreement dated as of August 18, 2006, under which TFC agreed to and did make certain revolving loans and other financial accommodations available to Debtor (the "Agreement"). The Agreement was subsequently amended to include TD Bank North ("TD") as a participant lender (as amended, the "Loan Agreement" and collectively, the "Lenders"). Prior to the Petition Date, TFC announced its decision to discontinue lending to borrowers in the type of business conducted by Debtor.

On the Petition Date, Debtor filed a list of its 20 largest secured creditors, as required by Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "20 Largest List"). [dkt item 1]

Also on the Petition Date, in the Individual Case, Mr. Forgione filed a list of his twenty largest unsecured creditors, also as required by Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Individual 20 Largest List"). [Ind. dkt item 1]

Shortly after the Petition Date, on May 17, 2010, the Office of the United States Trustee (the "UST") mailed out letters by which it solicited membership on an official committee of

---

[1] All references to docket items are in Debtor's case, unless noted as "Ind." for the Individual Case.

[2] The Court has recently issued a Decision and Order appointing an examiner in Debtor's case. *See Decision and Order Directing the Appointment of an Examiner*. [dkt item 154] Further procedural background regarding Debtor's case can be gleaned therefrom.

unsecured creditors for Debtor. This solicitation was based on Debtor's 20 Largest List.[3] The UST directed that responses were due by June 1, 2010.

On June 8, 2010, the UST appointed an Official Committee of Unsecured Creditors ("Committee") in Debtor's case, pursuant to Section 1102(a)(1). [dkt item 30] The Committee is comprised of: Dr. Gary Dalto; Daniel W. DeLuca; Russell Johnson; William Perman; and John and Eleanor Weigel (individually, a "Member" and collectively, the "Members"). [dkt item 30] At the time of the appointment, each of the Members was listed on Debtor's 20 Largest List as the holder of a "contingent" claim in a specified amount.

On June 10, 2010, Mr. Forgione filed his Individual Schedule F—Creditors Holding Unsecured Nonpriority Claims. [Ind. dkt item 10] Each Member of the Committee is listed on Mr. Forgione's Schedule F as the holder of a "contingent" claim, and the claim is listed as a "loan."

On June 11, 2010, Debtor filed its Amended Schedule F—Creditors Holding Unsecured Nonpriority Claims. [dkt item 34] Each Member of the Committee is listed on the Debtor's Schedule F as the holder of a "contingent" claim, and the claim is listed as an "investor."

On June 22, 2010, this Court entered an Order authorizing the Committee's retention of Thaler & Gertler, LLP as counsel. [dkt item 40]

On July 1, 2010, TFC filed a motion to disband the Committee (the "Committee Motion"). [dkt item 57]

On July 1, 2010, this Court entered an Order authorizing the Committee's retention of Marcum LLP as accountants. [dkt item 59]

---

[3] As of May 17, Debtor had not filed its complete schedules and statement of financial affairs.

-3-

On July 13, 2010, pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule"), and E.D.N.Y. Administrative Order No. 556,[4] this Court entered an Order establishing September 21, 2010, as the bar date for the filing of claims against Debtor which arose prior to the Petition Date. [dkt item 71]

On August 11, 2010, this Court entered a Scheduling Order setting a trial on the Committee Motion for August 25, 2010. [dkt item 109]

On August 12, 2010, both the Committee and the UST filed objections to the Committee Motion. [dkt items 111, 112]

On August 25, 2010, this Court conducted the trial on the Committee Motion.

As of August 25, 2010, every Committee member had filed unsecured Proofs of Claim in Debtor's case, as follows: Gary Dalto, claim number 73, filed on August 25, 2010, in the amount of $1,050,000; Daniel W. DeLuca, claim number 1, filed on May 21, 2010, in the amount of $1,006,667; Russell E. Johnson, claim number 71, filed on August 6, 2010, in the amount of $750,000; William and Eileen Perman, claim number 72, filed on August 16, 2010, in the amount of $2,000,000; and John and Eleanor Weigel, claim number 56, filed on July 15, 2010, in the amount of $830,000. As of August 25, 2010, no objections had been filed to any of the Committee Member claims.

Evidence at the trial included exhibits introduced by TFC, the Committee, and the UST, as well as testimony from Mr. Forgione, and Committee member Mr. Weigel. The documentary evidence conclusively established that no member of the Committee held a promissory note or guaranty executed by Debtor, and that each held a promissory note personally executed by Mr. Forgione. Further, the trial evidence was clear that each Committee Member was listed in

---

[4] Pursuant to E.D.N.Y. Administrative Order No. 556, on March 29, 2010, the Court adopted guidelines for the submission of bar date orders in chapter 11 cases.

Debtor's Schedules as an investor, while being listed in the Schedules in the Individual Case as a lender, and in each instance for the same amount. Finally, the trial evidence was clear that each Committee Member is similarly situated to a number of the other persons listed on the 20 Largest List in Debtor's case and the 20 Largest List in the Individual Case; each such person is listed as a creditor in both cases, yet holding only a promissory note from Mr. Forgione personally (collectively, the "Investors").

TFC asserts that no Committee Member holds an allowable claim against Debtor, but, instead, may hold a claim only in the Individual Case. The Committee asserts that various liability theories exist under which Debtor is or may be liable to the Committee Members and the Investors. All parties recognize that the issues of whether the Committee Members hold allowable claims against Debtor extend beyond the Members of the Committee to the similarly situated Investors.

TFC's challenge to the Committee formation is not a claim of a procedural defect in the manner by which the Committee was appointed. TFC has not asked this Court to direct the UST to appoint another committee of unsecured creditors or direct the UST to appoint additional members to this Committee; rather, TFC's sole challenge is its assertion that no Member holds an allowable claim against Debtor and, therefore, the Committee should be disbanded.

## Analysis

The threshold issue for this Court is the standard of review to be applied to consider the actions of the UST in appointing the Committee Members. That is, whether review of the UST's appointment of creditors committee members is conducted under an arbitrary and capricious standard, an abuse of discretion standard, a clearly erroneous standard, or a *de novo* review. The ultimate issue is whether the UST acted in derogation of its authority in appointing the Members.

*Standard of Review*

Despite limited case law on this issue, the majority of courts holds that the bankruptcy court has the inherent power, as well as the statutory authority under Section 105(a), to review acts of the UST, under an "arbitrary and capricious" or "abuse of discretion" standard of review. *See, e.g.*, *In re Mercury Fin. Co.,* 240 B.R. 270 (E.D. Ill. 1999)(internal citations omitted); *In re Barney's Inc.*, 197 B.R. 431, 438 (Bankr. S. D. N. Y. 1996)(holding that the court reviews the UST's appointment of a committee under an arbitrary and capricious standard).

As noted in *Barney's*, the arbitrary and capricious standard is appropriate because appointment of a creditors committee is an administrative function, not a judicial function:

> The bankruptcy court formerly was authorized to change the membership or size of a statutory committee if it determined that the existing membership was not representative of the different kinds of claims or interests to be represented. *See* 11 U.S.C. § 1102(c) (repealed). Subsection (c) was repealed in 1986 pursuant to the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, PUB.L. NO. 99-554, which extended and expanded the pilot United States trustee system on a permanent nationwide basis. Congress intended to "separate the administrative duties [of the United States trustee] from the judicial tasks, leaving bankruptcy judges free to resolve disputes untainted by knowledge of administrative matters unnecessary and perhaps prejudicial to an impartial judicial determination." H.R.REP. NO. 99-764, 99th Cong., 2d Sess. 18 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5230. Thus, the purpose of amending § 1102 was "to transfer the authority to appoint the chapter 11 committee of unsecured creditors from the court to the United States trustee as it is an administrative task." *Id.* at 28, U.S.C.C.A.N. at 5241.

*In re Barney's Inc.*, 197 B.R. at 438 (some internal citations omitted).

In adopting an appropriate standard to review the UST's exercise of its administrative function, consideration should be given both to the statutory language selected by Congress and the role of the UST, particularly in chapter 11 cases. First, Section 1102(a)(1) provides as follows:

> (a)(1) Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee **shall** appoint a committee of creditors holding unsecured claims and **may** appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

11 U.S.C. § 1102(a)(1)(emphasis supplied).  Thus, Congress directed that the UST shall appoint a creditors committee as early in the case as is practical, and may appoint additional committees if the UST deems same "appropriate."  The UST is also given both statutory direction and discretion as to who should populate the committee; Section 1102(b)(1) provides that "a committee appointed under section (a) . . . shall **ordinarily** consist of the persons, willing to serve, that hold the seven largest claims against the debtor. . . ." 11 U.S.C. § 1102(b)(1) (emphasis supplied).

Second, the court's role in the committee formation process is expressly limited. Section 1102(a)(2) grants the Court authority to order the appointment of additional creditors committees and/or equity security holders committees "if necessary to assure adequate representation of creditors or of equity security holders." 11 U.S.C. § 1102(a)(2).  Section 1102(a)(4) grants authority to the court to "order the United States Trustee to change membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders."  11 U.S.C. § 1102(a)(4). Notably, however, Section 1102 is silent as to this Court having power to order a committee to be disbanded, rather than reconstituted to ensure adequate representation.

Finally, the United States Court of Appeals for the Second Circuit recently addressed the UST's role in *In re Zarnel*, – F.3d –, 2010 WL 3341428 (2d Cir. Aug. 26, 2010).  In *Zarnel*, the Second Circuit decided that the UST has standing to appeal the striking of debtors' bankruptcy petitions, as opposed to dismissal of their cases, where the debtors were ineligible to obtain bankruptcy relief for failure to have obtained mandatory credit counseling under Section 109(h), or a waiver or extension thereof.  In determining the UST had standing to appeal, the Second Circuit noted that "the U.S. trustees are responsible for 'protecting the public interest and ensuring that bankruptcy cases are conducted according to law.'" *In re Zarnel*, – F.3d –, 2010

WL 3341428 at *5(citing *In re Revco D.S., Inc.*, 898 F.2d 498, 499 (6th Cir. 1990); *In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003); and *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 824 (1st Cir 1990)).

The *Zarnel* opinion relies, in part, on Section 307 of the Bankruptcy Code, which authorizes the Trustee to "raise and [ ] appear and be heard on any issue in any case or proceeding under this title." 11 U.S.C. § 307; *In re Zarnel*, – F.3d –, 2010 WL 3341428 at *4. The opinion also juxtaposes this statutory mandate to the UST to protect the public interest with case law holding, in most circumstances, that "in determining whether a party has standing to appeal from a particular ruling of a bankruptcy court, we have frequently looked to whether an appellant is a "person aggrieved" that is, "a person 'directly and adversely affected pecuniarily by' the challenged order of the bankruptcy court." *In re Zarnel*, – F.3d –, 2010 WL 3341428 at *4 (citing *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991). The Second Circuit also noted, however, that pecuniary interest "is not the only test" and determined that the UST's role in the bankruptcy process is such that appellate standing to seek review of the striking of a bankruptcy petition versus dismissal of a bankruptcy case is appropriate. *In re Zarnel*, – F.3d –, 2010 WL 3341428 at *4.

Here, on the subject of committee appointments and population, the Bankruptcy Code does not simply provide standing upon the UST to be heard; rather, the Bankruptcy Code expressly delegates to the UST the initial responsibility to appoint a committee, and limits the court's role in committee composition. As the *Barney's* court noted, this separation is in furtherance of Congressional intent "to transfer the authority to appoint the chapter 11 committee of unsecured creditors from the court to the United States trustee as it is an administrative task." *In re Barney's Inc.*, 197 B.R. at 439 (citing 11 U.S.C. § 1102). Thus, it would be inconsistent with this transference of an administrative task for the Court to conduct a *de novo* review.

Finally, it is important to consider the function served by each reviewing standard. Appellate courts review decisions of trial courts about what the applicable law is or how the applicable law applies to a given set of facts under a *de novo* review; that is a reviewing court must draw its own conclusions after independently examining the law as applied to the facts. *See In re CBI Holding Co., Inc.*, 529 F.3d 432, 449 (2d Cir. 2008). Findings of facts made by the trier of fact are reviewed under a clearly erroneous standard; that is a reviewing court must be "left with the definite and firm conviction that a mistake has been committed" by the trier of fact. *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990)(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395(1948)). This standard gives deference to the trier of fact, and considers credibility assessments made at trial, which cannot be replicated by review of a sterile record.

However, the UST is not engaged either in a fact finding mission, nor deciding issues of law, in appointing a committee; these are purely judicial functions, and not administrative functions. The UST is not independently deciding who holds an allowable claim against the debtor; that, too, is a purely judicial functions. As is further discussed, *infra*, the UST is, instead, making an early case assessment under Section 1102(a)(1) of who may hold significant unsecured claims, not who holds allowable unsecured claims. Thus, it would be inconsistent with the structure of Section 1102 and the role of the UST for this Court to conduct any more stringent review than one determining whether the UST acted in an arbitrary and capricious manner.

Reviewing the decision of the UST in carrying out its appointment function can also be analogized to review of an administrative agency in carrying out its administrative functions. *See*

*generally, e.g.*, 5 U.S.C. §§ 701 et seq. (the Administrative Procedures Act, the "APA");[5] *see also In re PT-1 Commc'ns, Inc.*, 403 B.R. 250, 267-68 (Bankr. E.D.N.Y. 2009) (reviewing IRS decision to not accept tax return filed for purposes of pursuing tax refund under arbitrary and capricious standard).

The UST is appointed pursuant to Title 28, Section 581.[6] 28 U.S.C. § 581. Among the statutory functions of the UST is to maintain and supervise a panel of trustees eligible to serve in chapter 7 and 11 cases, and to supervise the administration of cases and trustees in cases under chapters 7, 11, 12, 13, and 15 of title 11. 28 U.S.C. § 586(a). Many of the assigned UST functions are in monitoring cases and filing pleadings or providing comments on a number of facets of bankruptcy matters. However, the power given by the Bankruptcy Code to actually appoint a creditors committee goes well beyond monitoring and commenting, and, thus, is a specific responsibility Congress intended to delegate to the UST.

Further, it is clear under Section 1102 that the UST was obligated by statute to appoint a committee in this case, and to populate that committee with holders of significant claims. As such, review of the UST's action is similar to review of an agency exercising a power delegated by Congress to act, subject to review by a court. Judicial review of action by the UST in carrying out a power specifically delegated by Congress should be under the same arbitrary and

---

[5] Section 706 of the APA provides:
> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

5 U.S.C. § 706(2)(A) (emphasis added);

[6] The statute applies to United States Trustees appointed in all federal judicial districts except Alabama and North Carolina, which instead have Bankruptcy Administrators. *See* 28 U.S.C. § 581 Note (3); *see also* http://www.uscourts.gov/bankruptcycourts/administrators.html.

capricious standard as is judicial review conducted by a court of an administrative agency's action under the APA.

Thus, action by the UST in carrying its power specifically delegated by Congress under Section 1102 should only be set aside if the UST relied on factors which Congress has not intended it to consider in appointing members to a committee.

*The UST Did Not Err in Appointing the Members of the Committee*

The UST did not act in an arbitrary or capricious manner in appointing the Members. Section 1102(b)(1) directs that, absent unusual circumstances, selection is to be from the holders of the seven largest unsecured claims. The UST based its solicitation of potential members listed on the 20 Largest List. In order to select members "as soon as practicable after the order for relief," as directed by § 1102(a)(1), the UST would have to rely on the Debtor's schedules, if filed, or, if not, upon the 20 Largest List, to solicit committee members. When a debtor files its schedules or a list of its twenty largest creditors early in a chapter 11 case, the UST can properly rely upon a verified pleading setting out who the debtor asserts, under penalty of perjury, are its largest unsecured creditors.[7] When the UST received responses from five creditors of the 20 Largest List who stated they were willing to serve on the Committee and appointed them, the UST properly exercised its appointment power.

Further, the fact that the UST chose from holders of contingent claims was also not improper. Congress was clear in defining what is a claim. Section 101(5)(A) of the Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Section 101(10) (A) defines a

---

[7] Under Rule 1008 of the Federal Rules of Bankruptcy Procedure, the schedules and the list of the 20 largest unsecured creditors must be verified under penalty of perjury under 28 U.S.C. § 1746. FED. R. BANKR. P. 1008.

-11-

"creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order of relief." 11 U.S.C. § 101(10)(A). Thus, a contingent right to payment constitutes a claim, and the holder of such a contingent right is a creditor.

TFC asserted that none of the Members and, in fact, none of the Investors, holds allowable claims against Debtor. Rather, they posit, these claims are only allowable in the Individual Case. The Committee responded by asserting that Debtor is the successor corporation to Mr. Forgione and his DBA and, therefore, Debtor is or may be liable for the debts of Mr. Forgione generally and, in particular, to the Members and the Investors. The Committee then argues that, although generally a successor company is not liable for the debts of its predecessor, there are four exceptions to the general rule of non-liability: (1) when there is an express or implied agreement for the successor to assume the predecessor's debts; (2) when the circumstances surrounding the transaction warrants a finding of a consolidation or merger of the two corporations; (3) when the successor company is a mere continuation of the predecessor; or (4) when the transaction is entered into fraudulently for the purpose of wrongfully defeating creditors' claims. *See Colon v. Multi-Pak Corp.*, 477 F.Supp.2d 620, 626 (S.D.N.Y. 2007)(citing *Schumacher v. Richards Shear Co., Inc.,* 59 N.Y.2d 239, 240 (N.Y. 1983)); *accord Societe Anonyme Dauphitex v. Schoenfelder Corp.*, 2007 WL 3253592 (S.D.N.Y. 2007).

TFC replied by asserting that successor liability does not exist on the facts of this case. The UST takes no position on successor liability.

Both the Committee and TFC overlook the procedural setting of the Committee Motion. No party in interest has invoked the claims adjudicative process as to the claims of any Member. None of the Members, as holders of filed claims, have received notice consistent with due process, nor as required by Bankruptcy Rule 3007, that this Court is being asked to substantively rule that they do not hold allowable claims in this case. Moreover, any determination on the

allowability of claims of the Members could have preclusive effect on the Investors. Therefore, it would be inappropriate for this Court to reach beyond the issue of whether the UST acted in an arbitrary and capricious manner in populating the Committee, and make a substantive determination on claims allowance.

Moreover, a filed Proof of Claim constitutes *prima facie* evidence that a debt is owed by the Debtor to the creditor. *See* 11 U.S.C. § 502(a); *see also In re Irons*, 343 B.R. 32, 40 (Bankr. N.D.N.Y. 2006); *In re Jorczak*, 314 B.R. 474, 481 (Bankr. D. Conn. 2004). Section 502(a) expressly provides that a proof of claim "filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Rule 3003(c)(2) of the Federal Rules of Bankruptcy Procedure requires a creditors whose claim is scheduled as contingent to file a claim. FED. R. BANKR. P. 3003(c)(2). Rule 3003(c)(3) requires a creditors who is required to file a claim in a chapter 11 case to do so by the bar date fixed by the court. FED. R. BANKR. P. 3003(c)(3).

Because each Member was scheduled as a contingent creditor prior to appointment to the Committee, each was a creditor who could be selected by the UST to serve. Because each Member had filed a proof of claim by the date of the hearing, each presumptively holds an allowable claim against Debtor.

Moreover, this Court does not need to reach substantive allowability to resolve the Committee Motion. In fact, it is precisely because substantive allowability cannot be determined at the earliest stages of a chapter 11 case when a committee is to be appointed, well before claims are even required to be filed, that the UST can and should rely on the schedules, if filed, or, if not, on the twenty largest list. Certainly, this Court cannot determine that the UST relied on factors which Congress has not intended it to consider.

Thus, the UST did not act in an arbitrary and capricious manner. In fact, even under a *de novo* review, the UST could not be said to have acted improperly. At the appointment stage, and even at this stage of the case, this Court could not make a substantive determination on claims allowance for each Committee Member. While a Committee Member having its claim disallowed at a later juncture could be a basis to remove such person from the Committee, this Court cannot at this juncture determine that all Committee Members will or should have their claims disallowed. Thus, this Court would not conclude that the applicable law under § 1102 was applied incorrectly to the given set of facts known at the time of appointment, or at the time of the hearing on the Committee Motion.

*Adequacy of Representation*

However, it does appear to the Court that, as facts have become known and as events have unfolded, that a change in the membership of the Committee may be appropriate. The interests of Investors, as possibly holding allowable claims in this case and in the Individual Case, may not be representative of creditors of Debtor who do not hold claims in the Individual Case. In the alternate, it may be appropriate to administratively consolidate Debtor's case with the Individual Case and have one unsecured creditors committee populated by unsecured creditors in each case to generally represent unsecured creditors of both cases.

On September 3, 2010, the UST filed an Appointment of the Official Committee of Unsecured Creditors in the Individual Case. [Ind. dkt item 32] The Individual Case Committee consists of three of the five members of the Debtor's Committee: Dr. Dalto; Mr. De Luca; and Mr. and Mrs. Weigel. Certainly, having one committee for both cases would create economies for both cases, if such an approach were substantively appropriate.

In that this Court has recently appointed an examiner in this case and set a protocol therefore to, *inter alia*, save expenses to parties and the estate, rather than require the parties to

restart a process seeking to change the membership and/or function of the Committee, this Court will separately enter an order denying the present Committee Motion, and directing the parties to show cause why this Court should not administratively consolidate Debtor's case with the Individual Case with one unsecured creditors committee, and/or direct the UST to change the membership of the Committee in this case.  A separate order consistent herewith will issue.



Dated: September 15, 2010  
       Central Islip, New York

                                                            **Alan S. Trust**  
                                        **United States Bankruptcy Judge**