UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

               Case No.: 10-73724-AST

JNL FUNDING CORP.,         Chapter 11

       Debtor.
-----------------------------------------------------------X

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CONTEMPT FILED BY EOPABC, INC., ASSIGNEE OF LIQUIDATION TRUSTEE SERVICES, LLC

### Issues before the Court and summary of ruling

Pending before the Court is the Motion for Contempt (the "Motion") filed by EOPABC,

Inc. ("EOPABC"), assignee of the Liquidation Trustee Services, LLC ("LTS"), seeking the

imposition of contempt sanctions against Nina Francois, as Administrator of the Estate of Exume

Louise Simpson ("Francois"), and her attorney, Marcel Sager, Esq. ("Sager").   [dkt items

447-456[1]]   Contempt is sought under Bankruptcy Code §§ 105, 524(a)(2), and 1141.   EOPABC

also seeks to enforce the injunction arising under the plan of reorganization confirmed in these

consolidated cases.   Responses to the Motion and supplemental pleadings were filed [dkt items

462, 464]. A hearing on the Motion was held on April 3, 2013.   For the reasons set forth below,

the Motion is granted in part, and as a sanction for knowingly and willfully violating this Court's

Orders, Francois shall be liable to pay $2,500.00 to EOPABC for a portion of its costs in bringing

this Motion; all other relief sought in the Motion is denied.

### Background and Procedural History

On May 14, 2010 (the "Petition Date"), Debtor, JNL Funding Corp. ("JNL"), filed a

petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et*

---

[1] Unless otherwise indicated, all references to "dkt item –" are to items filed in the JNL Funding Corp. case, 10-73724-AST.

*seq.* (the "Bankruptcy Code").   Also on the Petition Date, JNL's principal, Joseph Forgione

("Forgione" and together with JNL, "Debtors"), filed his own voluntary petition, which was

assigned case number 10-73726-ast.[2]

JNL was incorporated in 2002, prior to which time JNL's principal, Mr. Forgione, operated

a similar business through a d/b/a he called JNL Funding.   JNL was a specialized real estate

finance company that originated and invested in a diversified portfolio of first mortgage assets in

the residential real estate market.   JNL was a "hard money" lender, investing primarily in real

estate related first mortgages and construction loans, making loans secured by first priority

mortgages primarily on single family and multi-family residential real properties.   JNL's loans

typically were made to real estate investors seeking to purchase and renovate properties for

investment purposes.   *See* Affidavit of Joseph G. Forgione [dkt item 17].

Prior to the Petition Date, Textron Financial Corporation ("TFC"), as lender, and JNL, as

borrower, had entered into a Loan and Security Loan Agreement dated as of August 18, 2006,

under which TFC agreed to and did make certain prepetition revolving loans and other financial

accommodations available to JNL (the "Agreement").   The Agreement was subsequently

amended to include TD Bank North ("TD") as a participant lender (as amended, the "Loan

Agreement" and collectively, the "Lenders").

On May 18, 2010, shortly after the Petition Date, JNL filed a motion seeking entry of an

order authorizing the use of cash collateral pursuant to 11 U.S.C. § 363 (the "Cash Collateral

Motion"). [dkt item 7]

On May 20, 2010, TFC filed an objection to the Cash Collateral Motion. [dkt item 11]   In

TFC's objection, it asserted that, as of the Petition Date, JNL was liable to the Lenders in the

approximate aggregate principal amount of $31,168,105.72, plus any then outstanding interest,

---

[2]  All references to the Forgione case docket are "Forgione dkt item --."

fees and expenses (collectively, the "Prepetition Obligations").   Also on May 20, 2010, an emergency hearing was held, at which time JNL was authorized to use cash collateral on an interim basis until a May 28, 2010 scheduled hearing (the "May 28 Hearing").

Prior to the May 28 Hearing, JNL and TFC entered into an agreement extending JNL's use of cash collateral until July 2, 2010, on certain terms and conditions, and providing adequate protection for such use.

On June 8, 2010, the United States Trustee (the "UST") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to 11 U.S.C. § 1102(a)(1). [dkt item 30]

On July 13, 2010, this Court entered an Order setting September 21, 2010 as the last date to file claims in the JNL Case. [dkt item 71]

On July 27, 2010, this Court entered an Order setting October 4, 2010 as set as the last date to file claims in the Forgione Case. [Forgione dkt item 24]

On August 26, 2010, following various additional motions being filed and hearings being held, this Court issued an Order directing that an examiner be appointed by the UST, and establishing the examiner's role as being to investigate and report on four primary issues regarding JNL's prepetition activity (the "Appointment Order"). [dkt item 154]   This Court also authorized an examiner to investigate other matters deemed "necessary and relevant to the complete and full investigation of the four enumerated areas[.]"   Appointment Order at p. 7.

On September 7, 2010, this Court granted the UST's application to appoint Christopher G. Ellis as Examiner (the "Examiner"). [dkt item 160]   To assist the Examiner in carrying out his function, the Court ordered the parties to cooperate with the Examiner, and empowered the Examiner to conduct voluntary interviews, review documents, and to issue Rule 2004 subpoenas

for involuntary production and examinations.   This Court authorized the Examiner's retention of his financial advisory firm and a law firm. [dkt items 185, 189]

After a hearing held on September 29, 2010, the Court issued an Order approving the Joint Administration of JNL's case and Forgione's case under case number 10-73724-ast. [dkt items 202, 204]

On October 28, 2010, the UST appointed a creditors committee in the jointly administered cases.   [dkt item 203]   All the members of the joint Committee are Noteholders.

On November 15, 2010, the Examiner issued a report of his findings (the "Examiner's Report"). [dkt item 209]   The Examiner's Report includes a scope of work performed, his observations, and his conclusions.

A status conference was held on December 1, 2010, at which the Examiner reported on his observations and conclusions.

After numerous additional pleadings were filed and hearings were held, on March 4, 2011, Debtors, the Committee, and TFC filed a Joint Plan Term Sheet [dkt item 294] (the "Plan Term Sheet"), which, *inter alia*, contemplated a global resolution of substantial portions of the Chapter 11 cases, including all investigations, claims and adversary proceedings as between JNL, Forgione, TFC, the Committee, and the bankruptcy estates.

On March 11, 2011, Debtors, the Committee, and TFC filed a Stipulation and Agreed Order in Furtherance of Joint Plan Term Sheet [dkt item 296] providing for: (i) implementation of the Plan Term Sheet by transfer of the TFC Collateral to TFC and commencement of liquidation of that collateral; (ii) a budget for the period from execution of the Stipulation on March 11, 2011 through the effective date of the forthcoming Plan; (iii) transfer of certain amounts from the JNL DIP accounts and the Forgione DIP account to an escrow account to be held by JNL's counsel for

use in paying Allowed Administrative Claims under the Plan; (iv) transfer of the balance in JNL's

DIP accounts to TFC; (v) a stay of all pending litigations and investigations by the parties to the

Stipulation and the Examiner and his professionals; (vi) deadlines for filing the Plan and

Disclosure Statement, the Disclosure Statement hearing, and Confirmation Hearing, and entry of

the Confirmation Order; (vii) Forgione and JNL's CFO, Mayette, were to continue monitoring the

JNL business and protecting the TFC Collateral through the effective date of the Plan; and

(viii) representations and warranties by JNL, Forgione, and Mayette, which survive for a period of

six (6) months after the effective date.

On March 18, 2011, Debtors, the Committee and TFC (collectively, the "Plan

Proponents") filed their Joint Disclosure Statement.   [dkt item 299]   The Court scheduled a

hearing thereon for April 20, 2011, which was adjourned to May 11, 2011. [dkt items 308, 327]

On May 2, 2011, the Plan Proponents filed their Amended Disclosure Statement, and their

Amended Joint Plan of Reorganization (the "Plan"). [dkt items 323, 331]   On May 10, 2011, the

Plan Proponents filed their Second Amended Disclosure Statement. [dkt item 330]

On May 10, 2011, after a hearing on notice, the Court entered an Order Approving the JNL

Second Amended Disclosure Statement and Scheduling Hearing for Confirmation of Plan of

Reorganization for June 13, 2011. [dkt item 334]

On June 13, 2011, the Court entered a separate Order Approving the Second Amended

Disclosure Statement and Scheduling Hearing for Confirmation of Plan of Reorganization in the

Forgione case. [Forgione dkt item 92]

On June 30, 2011, after a hearing on notice, the Court entered its Order Confirming

Amended Joint Plan of Reorganization (the "Confirmation Order") [dkt item 367], confirming the

Plan for both the JNL and Forgione cases.

In spite of this extensive activity in these cases, and in spite of the existence of prepetition litigation involving JNL and Francois (discussed further below), at no time was Francois given notice of or otherwise made aware of these bankruptcy cases.

On February 15, 2013, EOPABC, as assignee of LTS, as assignee of JNL, filed the instant Motion seeking to have Francois and her attorney, Sager, held in contempt of Court for violating the Confirmation Order and the Plan Injunction.

On March 20 and 29, 2013, Sager and Francois filed opposition to the Motion.

On April 3, 2013, counsel for EOPABC and Sager appeared at a hearing on the Motion and presented arguments.   At the conclusion of that hearing, this Court took the matter on submission.

***The Plan and Confirmation Injunctions***

Relevant to the current dispute, the Plan provides, in part, as follows:

**13. LEGAL EFFECTS OF CONFIRMATION OF THE PLAN.**

**(d)** All Persons and governmental units who have held, currently hold, or may hold a Claim, Administrative Claim, or Interest discharged or terminated pursuant to the terms of the Plan shall be stayed, and upon completion of payments by Forgione of all amounts due under the Plan permanently enjoined by Section 524 of the Bankruptcy Code from taking any of the following actions on account of any such discharged Claim or terminated Interest: (i) commencing or continuing in any manner any action or other proceeding against Forgione, and his successors and assigns, and their assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Forgione, his successors and assigns, and their assets or properties; (iii) creating, perfecting, or enforcing any lien or encumbrance against Forgione, his successors and assigns, and their assets or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to Forgione, his successors and assigns, and their assets or properties; and (v) commencing or continuing any action, in any manner or place, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Any Person or governmental unit violating such injunction may be liable for actual damages, including costs and attorneys' fees and, in appropriate circumstances, punitive damages.

Plan at ¶ 13.1(d) [dkt item 331].

Also relevant to the current dispute, the Confirmation Order provides, in part, as follows:

7. Pursuant to the Plan, upon the occurrence of the Effective Date the Debtors shall transfer all of the TFC Collateral to the Liquidating Trust, together with all rights, claims and causes of action related thereto, except as otherwise expressly provided in the Plan. In connection with such transfers and conveyances, the Debtors agree to provide or execute corrective instruments or such other instruments as may be reasonably requested, from time to time, by the Lenders or the Liquidating Trustee.

8. In accordance with § 1141(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order are binding on the Debtors, each Creditor, and every other party-in-interest in this case and each of their respective successors and assigns (whether or not such Creditors or parties-in-interest voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such Claimant or party in interest has filed, or is deemed to have filed, a proof of Claim or proof of Interest), and any other Person giving, acquiring, or receiving property under the Plan, and any lessor or lessee of Property to or from the Debtors. The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for and in complete satisfaction of all Claims and Interests of any nature whatsoever, known or unknown, including, except as expressly provided in the Plan, interest accrued on or expenses incurred in connection with such Claims from and after the Order for Relief, against, the Debtors or their property or interests in property.

. . .

14. Pursuant to Section 13.1 of the Plan, and subject to the conditions set forth therein, except with respect to the Surviving Liquidating Trust Claims and as otherwise expressly provided in the Plan, or any other Order of this Court, all persons or entities who have held, hold or may hold Claims against or Interests in the Debtors, along with their respective present and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtors, their respective estates, any party expressly released pursuant to the Plan, or any of their respective property with respect to such Claim or Interest (other than actions brought to enforce any rights or obligations under the Plan):

  i)   commencing or continuing in any manner any action or other proceeding of any kind;
  ii)  enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order;
  iii) creating, perfecting, or enforcing any lien or encumbrance, in any manner;
  iv)  asserting any setoff, right of subrogation, or recoupment;
  v)   commencing or continuing any action, in any manner or place, that does not comply with or is inconsistent with the provisions of the Plan or this Confirmation Order; and
  vi)  pursuing any Claim released pursuant to Section 13.1 of the Plan.

15. Such injunction shall extend to any successors of the Debtors, the Trusts and their respective properties and interests in properties. Additionally, upon the entry of this Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates are hereby enjoined (from taking any actions other than by or in connection with an appeal of this Confirmation Order) to interfere with the implementation or consummation of the Plan and/or the Trusts. Pursuant to Section 13.1 of the Plan, unless otherwise provided in the Plan, this Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the date of this Confirmation Order shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay; provided, however, that on the Effective Date, the stay shall be replaced to the extent provided in this Confirmation Order, with an injunction set forth in Section 13.1 of the Plan, sections 524 and 1141 of the Bankruptcy Code and/or this Order.

Confirmation Order at ¶¶ 7-8, 14-15 [dkt item 367].

Collectively, the injunctions arising under the Plan and the Confirmation Order are referred to as the "Injunctions."

### EOPABC's Claims

EOPABC claims that it is a person entitled to rely on and receive the protections of the Plan and the Confirmation Order, and in particular the Injunctions, as it is an assignee of LTS.   As a part of the Plan process, LTS was established as a liquidating trust into which all the TFC collateral was assigned for purposes of liquidating the debts owed by JNL and Forgione to TFC; one of the mortgages assigned to LTS is the a mortgage at issue in state court litigation pending between Francois and several parties.

Through its Motion, EOPABC seeks to hold Francois and Sager in contempt and to enforce the Injunctions, as follows.   Francois commenced a prepetition state court action in October 2008, assigned Index No. 27051/2008. (the "State Court Action"), claiming that the Estate of Exumene Louise Simpson a/k/a Louise Jean Simpson, of which Francois is the Administrator, was defrauded in connection with a real estate transaction.   In particular, Francois alleges that a deed

8

of certain real property located 592 Eastern Parkway, Brooklyn, New York (Block 1269, Lot 27) (the "Property") allegedly made by Exumene Louise Simpson and her long pre-deceased husband, Armand Simpson, to Michael Simpson dated February 22, 2006, but not recorded until May 20, 2008, was forged by a third party and is therefore void.   She further alleges that on or about August 1, 2008, the Property was conveyed by Michael Simpson to Dennis Anninos Realty Management Corp. a/k/a Dennis Anninos Realty Management ("Dennis Anninos Realty"); that on or about August 19, 2008, Dennis Anninos Realty conveyed the Property to Cool Water Group, LLC ("Cool Water"); and that on August 19, 2008, Cool Water granted a $471,000.00 mortgage to JNL secured by the Property (the "Cool Water Mortgage").   JNL received the Cool Water Mortgage prior to institution of Francois' suit on October 21, 2008.   This Cool Water Mortgage was part of the collateral JNL had granted to TFC in connection with the Agreement and certain prepetition loans made by the Lenders to JNL, and, as such, were among the mortgages assigned as part of confirmation by JNL to LTS; subsequently, LTS assigned its rights under the Cool Water Mortgage to EOPABC.

EOPABC and Francois essentially agree that: (1) if the Francois deed to Michael Simpson is void as a forgery, then the Cool Water Mortgage may not be enforceable against the Property, unless the Confirmation Order is binding on Francois and converts her *in rem* claim against the Property to a monetary claim against the JNL bankruptcy estate; and (2) if the Injunctions apply to Francois, she would be barred from prosecuting her claims in the State Court Action as they would relate to an interest of JNL and its assignees in the Property.

The July 28, 2011 assignment from JNL to LTS provides, *inter alia*:

KNOW THAT, JNL Funding Corp., a New York Corporation with offices at 4792 Hempstead Turnpike, Farmingdale, NY 11735, (the "Assignor"), for good and valuable consideration, hereby assigns to Liquidation Trustee Services, LLC, a Delaware limited liability company, as Trustee of the TFC Liquidating Trust (the

"Assignee"), that certain Mortgage dated the 19th day of August 2008, made by Cool Water Group LLC in favor of JNL Funding Corp. in the principal sum of Four Hundred Seventy-One Thousand and 00/100 Dollars ($471,000.00) and recorded on the 1st day of October 2008 in Reel/Liber at Page/Control #/CRFN 2008000388371, in the office of the Register/Clerk of the County of Kings, covering premises known as and by: . . . 592 Eastern Parkway, Brooklyn, New York

. . .

This Assignment is given pursuant to order of the United States Bankruptcy Court for the Eastern District of New York (Central Islip) (the "Bankruptcy Court") in accordance with the Order of the Bankruptcy Court, dated June 30, 2011 (the "Confirmation Order", Docket No. 95) and entered on July 1, 2011 at 9:27 AM, confirming the Assignor's Amended Plan of Reorganization, dated May 2,2011 (the "Plan") and under the Liquidation Trust formed under that certain Liquidation Trust Agreement, dated June 6, 2011, between Assignor, the Assignee, as the Liquidation Trustee, and Textron Financial Corporation, individually, and as agent for itself and TD BANK, N .A., as the beneficiaries under the Liquidation Trust (collectively, "TFC") . . . .

Assignment of Mortgage at p. 1 [dkt item 448-1] (the "Assignment").

EOPABC alleges that Francois and her attorney, Sager, violated the Injunctions by proceeding with the State Court Action and by amending the Complaint to add LTS as a defendant after entry of the Confirmation Order.   EOPABC asserts that it only learned of JNL's bankruptcy filing on May 15, 2012[3], after entry of the Confirmation Order, and immediately advised Sager thereof.

EOPABC further alleges that it advised Francois and Sager numerous times about the Plan Confirmation Order and Injunctions, but they continued with the State Court Action in the face of this Court's Injunctions.   Francois and Sager do not dispute being advised of the Injunctions and do not dispute proceeding with the State Court Action with actual knowledge of the Injunctions; they simply argue that they were not bound by the Injunctions.

---

[3] In the Motion, counsel for EOPABC acknowledges that it had previously represented both JNL and LTS with respect to the State Court Action.   *See* Motion at ¶¶ 4, 14 [dkt item 448]. It is curious that counsel was unaware of JNL's bankruptcy case until May 2012 given that, as noted above, the July 28, 2011 Assignment from JNL to LTS specifically references JNL's bankruptcy case in significant detail.

**Analysis**

There are two primary issues for this Court to determine:

1. Is Francois bound by the Plan and Confirmation Order and the Injunctions arising thereunder; and

2. Should Francois and/or Sager be penalized for proceeding with the State Court Action after having actual knowledge of the Plan, Confirmation Order, and Injunctions and, if so, what is an appropriate sanction?

***Is Francois bound by the Plan and Confirmation Order and the Injunctions arising thereunder?***

1. *The Scope of Discharge under the Bankruptcy Code*

This analysis requires an examination of the scope of the bankruptcy discharge and the due process requirements for debts to be discharged.   "[T]he confirmation of a [Chapter 11 bankruptcy] plan . . . discharges the debtor from any debt that arose before the date of such confirmation."   11 U.S.C. § 1141(d)(1)(A).   "A 'debt' is defined to mean 'liability on a claim,' and, in turn, a 'claim' is defined to include any 'right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.'"   *In re WorldCom, Inc.,* 546 F.3d 211, 216 (2d Cir. 2008) (quoting 11 U.S.C. § 101(5)(A), (12)); *DPWN Holdings (USA), Inc., v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 151 (E.D.N.Y. 2012).   As Judge Gleeson of the Eastern District of New York noted in *DPWN Holdings*:

> A debtor that has completed Chapter 11 proceedings may use the bankruptcy court's confirmation order as an affirmative defense in subsequent lawsuits.   If a plaintiff asserts a claim that arose before the confirmation of the debtor's reorganization plan, the claim will generally be dismissed as having been discharged.

*Id.* (citing *Holmes v. Air Line Pilots Ass'n, In'l,* 745 F. Supp. 2d 176, 196-97 (E.D.N.Y. 2010)).

A creditor who knowingly pursues a claim that has been discharged in bankruptcy may be held in civil contempt and subject to sanctions. *See In re Kalikow*, 602 F.3d 82, 94-95 (2d Cir. 2010) (citing cases). The confirmation injunction also binds third parties who act on a named party's behalf, such as the creditor's attorney. *See id.* "Before a party can be found guilty of aiding and abetting civil contempt, the court must find: (1) that the party subject to the court's mandate committed contempt; and (2) that another party assisted the enjoined party." *Id.* (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)); *In re Nicholas*, 457 B.R. 202, 225 (Bankr. E.D.N.Y. 2011); *In re McKenzie-Gilyard*, 388 B.R. 474, 481 (Bankr. E.D.N.Y. 2007). The party seeking to hold another in civil contempt bears the burden of proof by clear and convincing evidence. *See McKenzie-Gilyard*, 388 B.R. at 481.

*2. The Requirements of Due Process*

As Judge Gleeson also noted in *DPWN Holdings*, the ability of a Chapter 11 debtor to discharge claims "cannot be divorced from fundamental principles of due process." *Id.* at 153 (quoting *In re Grossman's Inc.*, 607 F.3d 114, 125 (3rd Cir. 2010) (en banc)). "Before a claim may be discharged in a bankruptcy proceeding, the claimant must therefore be afforded notice and an opportunity to be heard." *Id.* (citing *Sanchez v. Northwest Airlines, Inc.,* 659 F.3d 671, 675-76 (8th Cir. 2011)). As also noted in these cases, while a bankruptcy court's confirmation order is generally afforded a preclusive effect, such effect cannot be given to a confirmation order if to do so would result in a denial of due process. *See id.* at 153-54 (citing *see Arch Wireless, Inc. v. Nationwide Paging, Inc.*, 534 F.3d 76, 82-83 (1st Cir. 2008)); *see also In re Kendavis Holding Co.*, 249 F.3d 383, 388 (5th Cir. 2001).

Here, one effect of the Plan and Confirmation Order would be to convert Francois' *in rem* right to challenge title to the Property to a monetary claim for damages against the JNL bankruptcy

estate.   However, the parties agree that Francois was not scheduled as a creditor and did not receive any timely notice of the JNL's bankruptcy proceedings and, in fact, received no notice prior to issuance of the Injunctions.   Thus, Francois cannot be held to hold a discharged claim, because her due process rights would have been violated; said otherwise, her *in rem* right to challenge JNL's title to or mortgage against the Property may not be abrogated without Francois having been afforded due process.   *See Reliable Elec. Co. v. Olson Constr. Co.,* 726 F.2d 620, 623 (10th Cir. 1984) ("[W]e hold that notwithstanding the language of section 1141, the discharge of a claim without reasonable notice of the confirmation hearing is violative of the fifth amendment to the United States Constitution.").   Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Trust Co.*, 339 U.S. 306, 314 (1950); *see Jones v. Flowers,* 547 U.S. 220, 226 (2006).

In this case, Francois did not receive these due process protections, in spite of JNL having been engaged in the State Court Actions with Francois prior to and during the pendency of the JNL bankruptcy case, and prior to entry of the Confirmation Order.   Thus, Francois was not, and cannot be, bound by the Confirmation Order and the Injunctions as and when issued by this Court, and her *in rem* rights against the Property, if any, are unimpaired by the Plan and Confirmation Order.

### *Should Francois and Sager be penalized for proceeding with the State Court Suit after having actual knowledge of the Plan and Confirmation Order?*

While Francois has the right to challenge the effectiveness of the Confirmation Order and the scope of the Injunctions as they relate to her, she should have done so before this Court.   When a challenge is made to the scope of a bankruptcy discharge and an injunction created incident thereto, that challenge should be brought in the bankruptcy court that issued the confirmation

order; this is particularly true because "a bankruptcy court's confirmation order is *res judicata* and bars relitigation of issues or claims that should have been raised in the bankruptcy proceedings." *DWNP Holdings*, 871 F. Supp. 2d. at 160; *see Sure-Snap Corp. v. State St. Bank & Trust Co.,* 948 F.2d 869, 873 (2d Cir. 1991); *see also In re Layo*, 460 F.3d 289, 293-94 (2d Cir. 2006).   However, an exception to *res judicata* arises where, as here, "there was not a full and fair opportunity to litigate a claim in the prior proceeding, and a lack of due process deprived [a litigant] of the opportunity to litigate its . . . claim in the bankruptcy proceedings."   *DWPN Holdings*, 871 F. Supp. 2d. at 160; *see In re Arch Wireless*, 332 B.R. 241, 252-53 (Bankr. D. Mass. 2005), *aff'd Arch Wireless*, 534 F.3d 76.

    Counterbalancing this, however, is the obligation of a litigant who learns of the existence of an injunction to honor that court order until relieved thereof.   *See McKenzie-Gilyard*, 388 B.R. at 482 (party that has actual or constructive knowledge of discharge injunction and willfully violates it by continuing the complained-of activity may be liable for civil contempt); *In re Torres*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) (same); *see also In re Rountree*, 448 B.R. 389, 416-17 (Bankr. E.D. Va. 2011) (same); *In re Walter*, 265 B.R. 753, 758-60 (Bankr. N.D. Ohio 2001); *Matter of Schewe*, 94 B.R. 938, 947 (Bankr. W.D. Mich. 1989 ("To knowingly violate a court order, a person need not have *formal* or *official* notice of it; actual knowledge is sufficient."); *accord Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51 (2d Cir. 1976).   Thus, while Francois could have sought relief from the Injunctions from this Court, she was not entitled to simply ignore the Injunctions.

    Because this Court has now determined that Francois is entitled to not be bound by the Injunctions, the issue, then, is the proper penalty for Francois and Sager acting in violation of the Injunctions once they had actual knowledge thereof.   The remedy suggested by EOPABC,

forfeiture of Francois' rights to litigate its claim of ownership of the Property, is far too severe.   A penalty for violation of an injunction "should be narrowly tailored to fit specific legal violations." *Welch v. United Parcel Serv., Inc*., 871 F.Supp.2d 164, 199 (E.D.N.Y. 2012) (citing *Patsy's Brand Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220 (2d Cir. 2003)); *see Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994).

Additionally, the determination of a proper sanction is complicated by the fact that EOPABC's counsel who filed the current Motion also represented JNL in the State Court Action while JNL was a party.   Even if JNL's specific counsel in that action did not know about the bankruptcy, JNL had an obligation to notify its own attorney about the bankruptcy while the State Court Action was pending, and had a separate obligation to notify Francois of its bankruptcy. Similarly, once LTS took title to the mortgage on the Property from JNL through the Assignment, and thereafter appeared in the State Court Action, LTS should have raised the Injunctions in a more timely fashion.   Thus, the current dilemma: on the one hand, EOPABC's predecessors in interest, JNL and LTS, failed to give Francois and Sager proper notice of this bankruptcy case; on the other hand, a party who is, or may be, subject to an Injunction cannot simply ignore that Court order.   The proper response for Francois and Sager would have been to come to this Court on their own initiative to seek relief from the Injunctions, rather than simply ignore them and proceed as they see fit.

This Court finds that the actual harm caused by Francois' and Sager's willful disregard of the Injunctions once they were given actual notice in May 2012 is limited to necessitating the filing of the instant Motion for contempt and the holding of a hearing on that Motion on April 3, 2013. While Francois would have incurred costs in seeking relief from the Injunctions and protecting her *in rem* rights, EOPABC would not have had to incur the costs of bringing these matters to this

Court's attention.    However, once Francois did act and seek this Court's intervention, EOPABC would have most likely incurred most of the costs it incurred in seeking the relief it now seeks, even though this Court has rejected the bulk of the relief sought by EOPABC.    Finally, the JNL bankruptcy estate has not been involved in this dispute and should not be awarded with a monetary award for enforcing the Injunction that benefitted the estate, especially since JNL caused much of this problem by not putting Francois on notice of the bankruptcy case on a timely basis.

Therefore, the proper sanction is for Francois and Sager to pay a portion of EOPABC's counsel fees and costs incurred in filing the instant Motion and in appearing at the April 3, 2013 hearing.    Given the specific facts of this case, however, this Court will limit the total sanction for which Francois is liable to $2,500.00, which this Court finds to be a reasonable fee which EOPABC incurred in connection with bringing this matter to this Court's attention.    No separate sanction is imposed as against Sager because he was acting solely as Francois' attorney, even if under a mistaken impression that believing his client to not be bound by the Injunctions allowed his client to ignore the Injunctions with impunity.    In the alternative, the sum of $2,500.00 is a reasonable sanction for Francois' knowingly and willfully violating the Injunctions.

### Conclusion

Based on the foregoing, it is hereby

**ORDERED**, that this Court find and concludes that Francois is not bound by the Plan and the Confirmation Order; however, this Court find and concludes that Francois knowingly and willingly violated this Court's Injunctions by continuing with the State Court Action after receiving actual notice of this bankruptcy case and the Injunctions in May 2012; Francois is therefore found to be and is held in civil contempt of court; and it is therefore

**ORDERED**, that EOPABC's Motion is hereby granted in part and denied in part as set forth herein; and it is further

**ORDERED**, that as a sanction for her knowing and willful violation of this Court's Injunctions, Francois shall be liable for a portion of EOPABC's attorneys fees and costs incurred in filing the instant Motion and for appearing at the April 3, 2013 hearing on the Motion, provided, however, that the total sanction for which Francois is   liable is limited to a total of **$2,500.00**, which this Court considers to be a reasonable and necessary fee for part of the costs incurred in preparing the Motion and appearing in connection therewith; in the alternative, the sum of **$2,500.00** is a reasonable sanction for knowingly and willfully violating the Injunctions; and it is further

**ORDERED**, that Francois shall pay the sum of **$2,500.00** to EOPABC's counsel, on EOPABC's behalf, within sixty **(60) days** from the date of entry of this Order and shall file an affirmation or proof of payment with this Court; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Order upon EOPABC, Francois, and Sager.



**Dated: July 19, 2013**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**