UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re                                                    Case No. 10-73724-ast

JNL FUNDING CORP.,                                       Chapter 11

                        Debtor.
----------------------------------------------------------X

## DECISION AND ORDER GRANTING MOTION TO DISGORGE

Pending before the Court in this converted chapter 11 case is the motion filed by R. Kenneth Barnard, chapter 7 trustee (the "Trustee"), seeking an Order directing the disgorgement of compensation paid to John Weigel as Distribution Trustee of the JNL/Forgione Distribution Trust established under a confirmed chapter 11 plan (the "Motion"). [dkt item 540]  For the reasons to follow, the Motion is granted.

Facts and background

This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the standing Orders of reference in effect in this district.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Court makes the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052; the vast majority of the fact are undisputed based upon the pleadings related to this dispute, as well as pleadings on file in this case.

On May 24, 2010, JNL Funding Corporation ("JNL"), filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"[1]), commencing the above-referenced bankruptcy case. JNL's former principal, Joseph G. Forgione, also filed for

---

[1] Hereinafter, any reference to "section" or "§" shall refer to a section of the Bankruptcy Code, unless otherwise indicated.

relief under chapter 11, commencing case number 10-73726-ast.  On October 27, 2010, the Court entered an order for the joint administration of the JNL and Forgione estates [dkt item 204]

On June 30, 2011, the Court entered an order confirming the Amended Joint Plan of Reorganization of JNL and Forgione (the "Plan" and the "Confirmation Order") [dkt item 367]. The Plan, *inter alia*, established a Liquidating Trust and a Distribution Trust. Pursuant to Paragraph 1.2 of the JNL/Forgione Distribution Trust Agreement (the "Trust Agreement") which was incorporated into the Plan and the Confirmation Order, the Distribution Trust was to be funded by contributions from the Liquidating Trust and Forgione. The Distribution Trust would then make distributions to creditors and professionals, and "otherwise implement[ ] the Plan . . . ." (Trust Agreement at 2). In addition, the Distribution Trust was required to pay the post-Plan Effective Date quarterly fees mandated by statute to be paid to the U.S. Trustee (the "UST Quarterly Fees").[2] *See* 28 U.S.C. § 1930(a)(6).

John Weigel was appointed as Trustee of the Distribution Trust.[3] Under Weigel's direction, the Distribution Trust made distributions to creditors and professionals, ultimately exhausting the funds paid to it under the Plan. However, the Distribution Trust failed to pay the UST Quarterly Fees as required by the Plan, and also failed to file the quarterly operating or disbursement reports as required by the Plan.

On or about October 4, 2017, the Court sent an email to counsel for JNL, the Distribution Trust and the U.S. Trustee, asking for a letter to be filed on the docket regarding whether the JNL case was ready for entry of a final decree. On October 18, 2017, JNL filed a letter stating

---

[2] "[C]ommencing in the fourth quarter of 2011 and continuing through the end of the Post-Effective Date Period, the Liquidation Trust and the Distribution Trust shall pay the Post-Effective Date Quarterly Fees that are imposed for such period(s) and are attributable to disbursements made by their respective Trust." (Confirmation Order at ¶ 31).

[3] Prior to serving as the Distribution Trust Trustee, Weigel served as the Chairman of the Consolidated Official Committee of Unsecured Creditors in this Case.

that its counsel was unaware of any matter that would prohibit the entry a final decree. [dkt item 508] However, on November 9, 2017, the US Trustee filed a letter stating that no operating or disbursement reports had been filed, and that no quarterly fees had been paid to the U.S. Trustee since the second quarter of 2012. [dkt item 510]

After a hearing at which this Court raised the prospect of having to convert the JNL case, and after several adjournments, on May 9, 2018, the Court entered an order directing the Distribution Trust to file a schedule of disbursements made and an accounting of the UST Quarterly Fees, along with a plan for paying those fees (the "Compliance Order"). [dkt item 513] That report was to have been filed no later than June 13, 2018.  The Distribution Trust failed to comply with the Compliance Order. Thereafter, on June 22, 2018, the Court entered an order converting the case to chapter 7 (the "Conversion Order"). [dkt item 516]  The chapter 7 Trustee was then appointed.[4]

In the Conversion Order, the Court found that the Distribution Trust had failed to comply with its obligations under the Plan and the Confirmation Order, and that those failures constituted "a failure to comply with an order of the court under § 1112(b)(4)(E), and a material default with respect to a confirmed plan under § 1112(b)(2)(N)."  *See* Conversion Order. [dkt item 516]  Those failures included the failure to pay the UST Quarterly Fees. No appeal was taken from the Conversion Order.

On October 22, 2018—four months after conversion—Weigel's counsel filed the delinquent operating reports on behalf of the Distribution Trust for the quarters between September 2011 and September 2017 [dkt items 531-537]. The reports showed that the

---

[4] On June 22, 2018, the Court ordered that the joint administration of JNL with the Forgione case be discontinued, ahead of the conversion of the JNL case to a chapter 7 proceeding [dkt item 514].

Distribution Trust had paid hundreds of thousands of dollars in compensation to Weigel, his counsel, and his accountants, while failing to pay the UST Quarterly Fees.

On February 8, 2019, the Trustee filed the current Motion, seeking an order directing Weigel to disgorge enough of the compensation paid to him by the Distribution Trust to pay (i) the amount of the unpaid UST Quarterly Fees ($21,125.00[5]), and (ii) the amount of fees and costs incurred by the Trustee and his professionals in their efforts to compel Weigel to comply with his obligations as the Distribution Trustee.

On March 8, 2019, Weigel filed a response (the "Response") [dkt item 547], objecting to the request for disgorgement on various grounds.[6]

On March 15, 2019, the Trustee filed a memorandum of law in support of his Motion to Disgorge [dkt item 548].

Analysis

Section 105(a) provides that the bankruptcy court:

> may issue any order … that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). While the authority granted under § 105(a) is equitable and broad, *Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct. 1105, 1112 (2007), it does not authorize the creation of substantive rights that are otherwise unavailable under applicable law, or constitute "a

---

[5] On March 28, 2019, the U.S. Trustee Payment Center filed an amended proof of claim for $21,125.00 in unpaid, accrued fees [claims dkt item 94-2]. This proof of claim amended an earlier proof of claim filed on July 13, 2018, asserting $26,975.00 in unpaid quarterly fees [claim dkt item 94-1]. The Court treats the amended proof of claim as the U.S. Trustee's current representation of the amount to it owed for post-Effective Date quarterly fees.

[6] Weigel opens his Response by complaining of the alleged failures of the Trustee to satisfy various procedural requirements. These points are either factually unfounded or are not "fatal" to the Motion to Disgorge, as Weigel claims.

roving commission to do equity." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (internal citations omitted). However, it is beyond dispute that the authority of this Court under § 105(a) includes the power to enforce its own orders. *E.g. Matter of Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016) ("[T]he [Bankruptcy] Code charges the bankruptcy court with carrying out its orders . . . . Hence, a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." (citing § 105(a) and *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016)).[7]

Disgorgement is an equitable remedy used to wrest ill-gotten gains from a wrongdoer. *See, e.g., SEC v. Huffman,* 996 F.2d 800, 802 (5th Cir.1993). This Court also may order disgorgement of fees to address a breach of fiduciary duty. *See In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 713 (Bankr. S.D.N.Y. 2008) ("Bankruptcy law also gives a court wide discretion in fixing a remedy for breach of fiduciary duties by a bankruptcy professional. The available remedies range from sanctions or the refusal, reduction or disgorgement of attorney's fees.") (internal citations omitted).

Given the broad language of § 105(a), this Court may require disgorgement when a party who bears the obligation to pay certain costs or expenses under a confirmed Plan and who is entrusted with estate funds to make those payments fails to do so. Weigel does not allege that he did not receive adequate funds to pay the Quarterly Fees nor have access to the information required to file the required reports.

Weigel begins by arguing that the disgorgement request must be denied because disgorgement is not permitted "to simply remedy administrative insolvency." However,

---

[7] Although this Case is now a chapter 7 case, the Confirmation Order is not nullified; it can be enforced to address pre-conversion failures to comply with its terms. Case conversion does not protect violators of a confirmation order from accountability for their violations.

disgorgement is not used here to remedy administrative insolvency; disgorgement is sought and allowed here to enforce the Plan and Confirmation Order and this Court's requirement that the Quarterly Fees be paid, and be paid by Weigel with the funds entrusted to him.

Weigel next argues that the request for disgorgement must be denied because his compensation was not awarded on an interim basis under § 331, and thus cannot now be subject to § 330 scrutiny of interim compensation. In the alternative, he argues that, even if his compensation was "colorable as § 331 interim compensation subject to § 330 scrutiny," § 330 establishes that his interim fee awards were reasonable and thus cannot be reduced. However, again, Weigel misunderstands the nature of the remedy. This is not a proceeding for approval of a professional compensation award; it is a proceeding for disgorgement for the purpose of enforcing the Confirmation Order. As such, §§ 330 and 331 are not applicable.

Weigel also argues that the request for disgorgement must be denied because he had a mistaken, but good faith, belief that other parties were paying the Quarterly Fees. In support, Weigel states in Paragraph 8 of his Affidavit [dkt item 547 exh. 1] that he "assumed" that the Liquidation Trust and the Debtors were paying the UST Quarterly Fees. He then insists in his Response that, because "the Liquidation Trust and the Debtors were making distributions *to* the Distribution Trust, it [was] not unreasonable for [him] to believe that the Liquidation Trust and the Debtors were paying the US Trustee fees." (emphasis in original.) This argument fails regardless of whether Weigel actually held the belief that someone else was paying the fees or filing the reports.  Again, filing the reports and paying the US Trustee fees were part of Weigel's obligations as the Distribution Trust trustee.  It is not reasonable for a person charged with fiduciary and court-ordered obligations to rely on an unverified assumption that other people are meeting his obligations for him. Although Weigel alleges in Paragraph 8 of his Affidavit that

there was "confusion" amongst the parties as to who was paying, any such "confusion," especially in the face of the clear language of the Plan and Confirmation Order, does not excuse Weigel's failure to obtain clarity on the point during the five plus years that these reports were not being filed and the fees not being paid. Moreover, Weigel does not even assert that he made any good faith effort to ascertain whether the Quarterly Fees were actually being paid or that the reports were actually being filed; he apparently just assumed that they were. Weigel cannot stand on his claimed, mistaken belief as a basis for avoiding accountability for his failing to comply with his obligations as the Distribution Trustee.

Relatedly, Weigel's argument that the Trust Agreement now "safeguards" him from liability from "good faith, reasonable mistakes" also fails. Setting aside the fact that Weigel's mistaken belief that others were paying the UST Quarterly Fees was not reasonable nor verified in any manner, the Trust Agreement does not strip the Court of its authority to enforce the Plan and Confirmation Order.

Finally, Weigel argues that the request for disgorgement must be denied because a disgorgement directive would interfere with the parties' ability "to rely on the permanency of the plan." This argument plainly inverts the purpose behind the policy of promoting plan permanence; if a plan is not enforced, there is no permanence.

Weigel does not assert that he was not obligated to file the report and pay the fees. In fact, he offers no cognizable legal or equitable argument in support of his contention that this Court cannot enforce the Plan and its Confirmation Order through disgorgement. Because the Court is enforcing the Plan and Confirmation Order, it does not find that Weigel breached his fiduciary duties.

For all of these reasons, it is proper to direct disgorgement for the purpose enforcing the Plan and Confirmation Order.

Conclusion

Accordingly, it is hereby

**ORDERED** that the Motion to Disgorge is **GRANTED**; and it is further

**ORDERED** that, by **August 31, 2020**, Weigel shall disgorge $30,000 to the Trustee, of which $21,125.00 shall be disbursed to the U.S. Trustee for unpaid Quarterly Fees, and the balance held pending consideration of allowable fees and commissions to the Trustee; and it is further

**ORDERED** that within **ten (10) days** of the Trustee's receipt of those disgorged funds, the Trustee shall to remit $21,125.00 to the U.S. Trustee; and it is further

**ORDERED** that, by **August 17, 2020**, the Trustee shall file a statement for fees, expenses and commissions incurred in connection with the Motion; Weigel shall have **fourteen (14) days** to file any response to the fee statement, after which time it will be on submission with the Court.



**Dated: July 31, 2020**  
**Central Islip, New York**

_____  
**Alan S. Trust**  
**United States Bankruptcy Judge**